

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CYBERCREEK ENTERTAINMENT, LLC,

                Plaintiff,                **DECISION AND ORDER**

v.                                         1:16-CV-00424 EAW

U.S. UNDERWRITERS INSURANCE
COMPANY,

                Defendant.

---

## **INTRODUCTION**

This matter was removed to this Court based on diversity jurisdiction on May 27, 2016. (Dkt. 1). Plaintiff Cybercreek Entertainment, LLC ("Plaintiff") claims that Defendant U.S. Underwriters Insurance Company ("Defendant") breached its insurance contract with Plaintiff, that Plaintiff thereafter suffered a loss, and that Plaintiff is entitled to actual and punitive damages. (Dkt. 1-1).

On June 3, 2016, Defendant moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (Dkt. 6). Defendant argues that the policy was cancelled according to the terms of the contract before the loss occurred, and, therefore, no breach occurred. (Dkt. 6-5 at 9-11). Defendant alternatively argues that punitive damages are not available under New York State law, so even if the complaint is not dismissed in its entirety, Plaintiff's punitive damages claim must be dismissed. (*Id.* at 11-16).

Because Plaintiff has failed to state a cause of action, Defendant's motion to dismiss is granted.

## FACTUAL BACKGROUND

According to the complaint, Plaintiff and Defendant entered into three contracts, insuring Plaintiff against physical damage and business losses to Plaintiff's restaurant and outdoor and indoor driving range for golf. (Dkt. 1-1 at 3-5). The final policy, and the one at issue in this action, number CP3554324C, was issued on April 26, 2014, and was set to expire on April 26, 2015. (*Id.* at ¶ 7). The policy covered commercial property damage, with building damage coverage up to $900,000.00, and business damage coverage up to $150,000.00. (*Id.* at ¶ 8).

The insurance policy at issue included a cancellation clause.[1] The clause provided:

---

[1] A copy of the insurance policy contract and the cancellation notice were attached by Defendant as part of its motion to dismiss. (Dkt. 6-4). Neither the policy nor the cancellation notice was attached to the complaint. (*See* Dkt. 1). Despite that fact, the Court can properly consider them in determining the motion to dismiss without converting it to one for summary judgment. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that even if not attached to the complaint, a document which is "*integral to the complaint* may be considered by the court in ruling on [a Rule 12(b)(6)] motion." (emphasis in original) (internal citations omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) ("Where [the] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."). Plaintiff expressly references the policy and the policy's cancellation in the complaint. (Dkt 1-1 at ¶¶ 7, 12). Plaintiff's claims for breach of contract require the existence of an underlying contract. The alleged breach occurred because Defendant cancelled the policy "unilaterally." (*Id.* at ¶ 12). This makes the policy and the cancellation notice "integral" to the complaint, and they are properly considered by the Court in deciding the motion to dismiss, without converting the motion to one for summary judgment. *See Roth*, 489 F.3d at 509. Indeed, in opposition to the

> [Defendant] may cancel [the] policy by mailing or delivering to [Plaintiff] written notice of cancellation at least:
> > a. 10 days before the effective date of cancellation if [Defendant] cancel[s] for nonpayment of premium; or
> > b. 30 days before the effective date of cancellation if [Defendant] cancel[s] for any other reason.

(Dkt. 6-4 at 12). It also provided that Plaintiff could cancel the policy "by mailing or delivering to [Defendant] written notice of cancellation." (*Id.*). There were no restrictions placed on Plaintiff's ability to cancel the contract at will. (*See id.*). Cancellation by Plaintiff did not require advance notice, as it did for Defendant. (*See id.*).

Plaintiff alleges that it made multiple improvements to its property upon the recommendation of Defendant. (Dkt. 1-1 at ¶¶ 9-10). The parties agree that Plaintiff was under no obligation to make such improvements. (*Id.* at ¶ 11; Dkt. 6-5 at 6).

Plaintiff claims that after it attempted to make the improvements, Defendant cancelled the policy by providing written notice on August 27, 2014, effective September 30, 2014. (Dkt. 1-1 at ¶ 12). Plaintiff seems to argue that the cancellation was premised on Plaintiff's inability to make the recommended improvements, and, therefore, Defendant's cancellation constituted a breach of the contract.[2] (*See id.* at ¶¶ 10-14).

---

motion to dismiss, Plaintiff voices no objection to the Court's consideration of the insurance policy contract and the cancellation notice. (*See* Dkt. 12).

[2] Plaintiff provides additional factual allegations in its response to Defendant's motion. (*See* Dkt. 12 at 3-4). In deciding a Rule 12(b)(6) motion, the Court is generally limited to reviewing "the allegations contained within the four corners of [Plaintiff's] complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998); *see, e.g., Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (finding that a district court errs if, in deciding a Rule 12(b)(6) motion, it "relies on factual allegations contained

Plaintiff alleges that after Defendant cancelled the policy, snow and ice damaged the building, "causing a collapse of a portion of the property" and actual damages, including loss of business, totaling $800,000.00. (*Id.* at ¶¶ 16-19). Plaintiff also asserts that it is entitled to punitive damages. (*Id.* at ¶ 21).

## DISCUSSION

### I. Standard of Review

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted).

---

in legal briefs or memoranda."). Unlike the Court's consideration of the insurance policy or the cancellation notice, Plaintiff's additional factual allegations were neither integral nor relied upon in framing the complaint. *See Roth*, 489 F.3d at 509; *Cortec Indus.*, 949 F.2d at 47-48. Therefore, the Court does not rely on any additional facts included in Plaintiff's response papers in deciding the instant motion. However, even if the Court did consider these additional facts, the result would be no different because the additional facts do not alter the inescapable conclusion that Plaintiff has failed to state a claim.

Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (citations omitted).

## II. <u>Analysis</u>

As discussed below, Plaintiff has failed to establish that there was a breach of contract. Plaintiff's arguments that the policy termination clause is unconscionable and ambiguous fail as a matter of law. Therefore, the complaint must be dismissed.

### A. <u>Plaintiff Failed to Sufficiently Plead a Breach of Contract</u>

Defendant argues that Plaintiff has not sufficiently alleged that Defendant breached the contract, and, therefore, Plaintiff has failed to state a claim upon which relief can be granted. The Court agrees.

Under New York law, a breach of contract claim has four elements: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). A plain reading of the complaint establishes the first, second, and fourth elements. (*See* Dkt. 1). However, Plaintiff has failed to sufficiently allege a breach.

"[W]here the parties have agreed to a termination clause, it must be enforced as written." *In re Gordon Car & Truck Rental, Inc.*, 59 B.R. 956, 959 (Bankr. N.D.N.Y. 1985) (quoting *Noah v. L. Daitch & Co.*, 22 Misc. 2d 649, 652 (S. Ct. N.Y. Co. 1959)). New York law allows for termination without cause when the parties have so agreed. *Red Apple Child Dev. Ctr. v. Cmty. Sch. Dists. Two*, 303 A.D.2d 156, 157-58 (1st Dep't

2003) ("It is a well-established principle of law that when a contract affords a party the unqualified right to limit its life by notice of termination[,] that right is absolute and will be upheld in accordance with its clear and unambiguous terms. . . . Such a termination is enforceable regardless of the cause of termination."); *see, e.g., Matter of Chang v. Dep't of Educ. of City of New York*, 137 A.D.3d 597, 597 (1st Dep't 2016) (upholding a contract which "afforded respondents the unconditional right to terminate the contract without cause. . . ."). Where a cancellation clause is silent as to whether "cause" is required to cancel the contract, New York law requires that a court infer that the contract is terminable without cause. *See Joseph Victori Wines, Inc. v. Vina Santa Carolina S.A.*, 933 F. Supp. 347, 352 (S.D.N.Y. 1996) ("[W]here a contract containing a written termination clause is silent as to whether cause is required for termination, the contract is terminable without cause.").

Pursuant to New York Insurance Law § 3426, certain statutory restrictions are placed on the ability to cancel a policy of commercial risk insurance. However, § 3426 does not apply to policies written on an excess line basis. N.Y. Ins. Law § 3426(l)(2). Defendant asserts that it is an excess-line broker under New York Insurance Law (Dkt. 6-5 at 10),[3] and the insurance policy indicates that Defendant is not subject to the requirements of New York Insurance Law (Dkt. 6-4 at 5). This status allows Defendant to sell insurance underwritten by carriers who are otherwise unauthorized to provide insurance in New York state. *See* N.Y. Ins. Law §§ 2105, 2117(h)(3); *John Paterno, Inc.*

---

3   Plaintiff "takes no position on Defendant's excess line carrier status. . . ." (Dkt. 12 at 8).

*By & Through Paterno v. Curiale*, 88 N.Y.2d 328, 332 (1996) ("A significant exception to [the rule that unauthorized insurers cannot sell insurance in New York] is that certain brokers, known as excess line brokers, are permitted by statute to procure insurance from unauthorized insurers."). Because the § 3426 requirements do not apply to an excess-line insurance contract, the cancellation of such a policy "need only comply with the terms of the [p]olicy itself." *Kinsale Ins. Co. v. OBMP NY, LLC*, 171 F. Supp. 3d 277, 282 (S.D.N.Y. 2016). Here, Plaintiff has made no allegations in the complaint that Defendant has cancelled the policy in violation of § 3426, or any other provision of New York Insurance Law. (*See* Dkt. 1; *see, e.g.*, Dkt. 12 at 8 (stating that Plaintiff "does not seek damages for violation of New York Insurance Law § 3426.")). Rather, Plaintiff relies upon a common law breach of contract theory. Therefore, the cancellation requirements of § 3426 are inapplicable, and the viability of Plaintiff's breach of contract claim must be assessed based on the policy's language alone.

Plaintiff has not specifically pointed to any part of the insurance policy contract allegedly breached by Defendant. (*See* Dkt. 1-1 at ¶¶ 1-21). Plaintiff asserts only that Defendant was "unjustified" in requesting non-mandatory improvements to the building, and that "the actions of the Defendant constituted a breach of the contract. . . ." (*Id.* at 5). However, by Plaintiff's own admission, the policy was cancelled with sufficient notice according to the policy's cancellation clause. (*See id.* at ¶ 12 ("[T]he Defendant . . . on or about August 27, 2014 unilaterally cancelled the policy . . . effective September 30, 2014.")).

Plaintiff forwards a conclusory argument that the policy was "wrongfully terminated." (Dkt. 12 at 6). The clear terms of the policy allowed Defendant to cancel the policy for "any" reason, as long as Defendant provided 30-days' notice. (Dkt. 6-4 at 12). Even if the cancellation clause could be read as being silent on whether cause was required to cancel the policy—which it cannot—the Court must assume that the policy was terminable without cause. *See Joseph Victori Wines, Inc.*, 933 F. Supp. at 352. Defendant's reason for cancelling the contract is wholly immaterial to this Court's analysis. *See Brown v. Retsof Min. Co.*, 127 A.D. 368, 372 (2d Dep't 1908) ("In view of the defendant's absolute right [to cancel the contract] in the exercise of discretion which was not subject to review, it is clearly unimportant to consider the question whether the defendant was actuated by some ulterior motive."); *Div. of Triple T Serv., Inc. v. Mobil Oil Corp.*, 60 Misc. 2d 720, 726 (S. Ct. Westchester Co. 1969) ("[W]here a contract gives either party thereto the absolute unqualified right to terminate upon notice, the court is precluded from inquiring whether such termination was actuated by an ulterior motive."), *aff'd* 34 A.D.2d 618 (2d Dep't 1970). Defendant had an unqualified right to terminate after providing 30-days' notice. Defendant cancelled the policy after providing more that 30-days' notice, which Plaintiff acknowledges in the complaint. (*See* Dkt. 1-1 at ¶ 12). The Court need not adjudicate Defendant's motivation for doing so. *See Div. of Triple T Serv.*, 60 Misc. 2d at 726. Plaintiff failed to sufficiently plead its breach of contract claim, and, therefore, the claim must be dismissed.

B.   **Plaintiff's Other Arguments Do Not Provide Grounds for Refusing to Dismiss the Complaint**

In opposition to the instant motion, Plaintiff advances two arguments not included in the complaint—that the cancellation clause is unconscionable, and that it is ambiguous. (Dkt. 12 at 6-8). Neither assertion was raised in the "four corners" of the complaint, and, therefore, neither is properly before the Court. *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998). Out of an abundance of caution, the Court addresses these claims on the merits below, and finds that neither argument provides a basis for relief from dismissal.

To be clear, although Plaintiff does not request leave to amend the complaint to include these arguments, even if it had, leave to amend would not be appropriate because any amendment to assert Plaintiff's unconscionability or vagueness theories would be futile. *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 367 (W.D.N.Y. 2005) ("[N]o amendment should be allowed if [the] plaintiff could not prevail on an amended claim because it is futile or untimely, because it fails to state a claim, or because the movant engaged in undue delay.") (citing *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).

1.   **The Policy Cancellation Clause is Not Unconscionable**

The Court first addresses Plaintiff's argument that the cancellation clause is unconscionable. (*See* Dkt. 12 at 6-7). As explained by the Second Circuit:

> Under New York law, a contract is unconscionable when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable . . . according to its literal terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d, 534 N.E.2d 824 (1988). Generally, there must be a showing

that such a contract is both procedurally and [substantively] unconscionable. *See id.* "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (1983); *see also Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999) ("A contract or clause is unconscionable when there is an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (quotation marks omitted)).

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121-22 (2d Cir. 2010) (quoting *Nayal v HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009)). Unconscionability is determined at the time of the contract. N.Y. U.C.C. § 2-302(1). "Absent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party." *Rowe v. Great Atl. & Pac. Tea Co., Inc.*, 46 N.Y.2d 62, 67-68 (1978). Unless there is "substantive unconscionability or fraud . . . , parties are charged with knowing and understanding the contents of documents they knowingly sign." *Horvath v. Banco Comercial Portugues, S.A.*, 461 F. App'x 61, 63 (2d Cir. 2012).

Plaintiff alleges that the insurance policy was procedurally unconscionable because Plaintiff's signatory "had no meaningful opportunity to negotiate" the specific terms of the policy. (Dkt. 12 at 7). Plaintiff further claims that the agreement was substantively unconscionable because it was one-sided and left "Plaintiff with no recourse." (*Id.*). Neither argument has merit.

Procedural unconscionability examines the contract-formation process and focuses on "the size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Gillman*, 73 N.Y.2d at 11 (internal citation omitted); *see, e.g., Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003). "In a commercial transaction by business people in a commercial setting, under terms that are standard in the trade, the factual predicate gives rise to a presumption of lack of unconscionability." *Bank of Am., N.A. v. Friedman Furs & Fashion, LLC*, 38 Misc. 3d 1201(A), at *7 (S. Ct. Kings Co. 2012) (holding that an experienced business person, who had been operating a profitable business for years, "cannot claim that they are commercially illiterate") (internal citation omitted). A signatory's prior commercial experience weighs against a finding of a lack of sophistication sufficient to establish procedural unconscionability. *See Gun Hill Road Serv. Station, Inc. v. ExxonMobil Oil Corp.*, No. 08 Civ. 7956(PKC), 2013 WL 1804493, at *11 (S.D.N.Y. Apr. 18, 2013) (asserting that significant prior experience in an industry weighed against finding procedural unconscionability where the signatory failed to read an agreement or consult with an attorney about its terms); *Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517, 520 (1st Dep't 2012) (finding that a signatory did not lack sophistication when he had previously entered into leases and acted as a principal of the entity at issue).

Here, Plaintiff claims that its signatory was "neither a legal, nor insurance professional." (Dkt. 12 at 7). The insurance policy contracts were made in a commercial

setting. Lack of experience can be a factor in determining procedural unconscionability, but Plaintiff's conclusory allegations are not sufficient to establish a basis for such a finding here. Plaintiff provides no information about the identity or background of its signatory. (*See id.*). Plaintiff has made no allegations that its signatory was inexperienced in running a business, and the complaint suggests that the business operated for at least three years before the cancellation of the insurance policy. (*See* Dkt. 1-1 at ¶¶ 5-7). Plaintiff entered into at least two insurance policy contracts before the one at issue here. (*See id.*).

Plaintiff has also not alleged that it lacked meaningful choice in entering into the agreements. Although Plaintiff claims that it had no opportunity to negotiate specific terms of the policy, "[i]t is noteworthy that [Plaintiff was] free to walk away from the . . . negotiations at any time" and obtain insurance from another provider. *See Dabriel, Inc.*, 99 A.D.3d at 520 (quoting *Accurate Copy Serv. of Am., Inc. v. Fisk Bldg. Assoc. L.L.C.*, 72 A.D.3d 456, 457 (1st Dep't 2010)). After Defendant cancelled the policy, Plaintiff attempted to do just that. (*See* Dkt. 12 at 6). Furthermore, disproportionate negotiating strength—in itself—is not a basis for a finding of procedural unconscionability. *See Mickle v. Christie's, Inc.*, 207 F. Supp. 2d 237, 253 (S.D.N.Y. 2002) ("Were disproportionate negotiating strength by itself to serve as ground to invalidate business transactions, every form of commerce through the country, and even beyond, would be immediately threatened or paralyzed."). Plaintiff has not alleged that its negotiating power was grossly inequitable. *See Gillman*, 73 N.Y.2d at 10. Similarly, Plaintiff has not asserted that Defendant engaged in high-pressure sales tactics or that

Defendant used fine print to hide the cancellation terms. In sum, Plaintiff has failed to cite to any procedural unconscionability.

Plaintiff has also failed to allege a meritorious theory of substantive unconscionability. Unconscionability can be established, in rare cases, by a showing of substantive unconscionability alone. *Id.* at 12. Contract terms are substantively unconscionable when they are unreasonably balanced in favor of one party over the other. *Id.* at 10; *see, e.g., Dassero v. Edwards*, 190 F. Supp. 2d 544, 553 (W.D.N.Y. 2002). "There is no general test for measuring the reasonableness of a transaction. . . ." *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 643, 647 (1989). However, a clause which equally binds the parties is not substantively unconscionable. *See Nayal*, 620 F. Supp. 2d at 573. Examples of terms which are substantively unconscionable include "inflated prices, unfair termination clauses, unfair limitations on consequential damages and improper disclaimers of warranty . . . [and] contract provisions that are oppressive, unjust, and unreasonably deprive a party of the benefits of his or her bargain." *Day Op of N. Nassau, Inc. v. Viola*, 16 Misc. 3d 1122(A), at *6 (S. Ct. Nassau Co. 2007). "Termination clauses exercisable by either party upon reasonable notice have invariably been upheld by the courts. . . ." *Div. of Triple T Serv.*, 60 Misc. 2d at 726.

Contrary to Plaintiff's assertion,[4] the cancellation clause is not substantively unconscionable under New York law. The cancellation clause was not "one-sided," as

---

[4] Plaintiff cites *Kuzma v. Protective Ins. Co.*, 32 Misc. 3d 1217(A) (S. Ct. Queens Co. 2011) for the proposition that a cancellation provision such as the one at issue here is "so one-sided [that it] must be found unconscionable and unenforceable. . . ." (Dkt. 12 at 6). Plaintiff's reliance on *Kuzma* is—at best—misplaced. The decision cited by Plaintiff

Plaintiff claims. (*See* Dkt. 12 at 6). Neither side was required to show "cause" before terminating the policy. (*See* Dkt. 6-4 at 12). Defendant could cancel the policy by providing notice, in writing, at least 30 days before the effective date of cancellation. (*Id.*). Plaintiff could cancel the policy at any time "by mailing or delivering to [Defendant] advance written notice of cancellation." (*Id.*). Plaintiff was not required to provide 30-days' notice. (*See id.*). The cancellation policy provided equal, if not better, terms to Plaintiff than to Defendant. This weighs heavily against any finding of substantive unconscionability. *See Nayal*, 620 F. Supp. 2d at 573.

Plaintiff also asserts that the clause was substantively unconscionable because Plaintiff would have no recourse to Defendant's decision to cancel the policy. (Dkt. 12 at 7). As described above, cause was not required for Defendant to cancel the policy. New York law allows for termination without cause when the parties have so agreed, which they did here. *See Red Apple Child Dev. Ctr.*, 303 A.D.2d at 157-58. The terms of the cancellation clause are clearly enforceable under New York law, and, therefore, are not substantively unconscionable.

"[T]he unconscionability doctrine is not designed 'to redress . . . inequality between the parties but simply to ensure that the more powerful party cannot surprise the

---

was overturned on direct appeal by the Second Department. *See Kuzma v. Protective Ins. Co.*, 104 A.D.3d 820 (2d Dep't 2013). The Appellate Division found numerous errors in the trial court's decision. *See id.* The trial court applied New York state unconscionability law, though it was required to apply Indiana unconscionability law. *Kuzma*, 104 A.D.3d at 821. Further, the trial court misapplied New York law, finding unconscionability when, in fact, the law did not support such a finding. *Id.* And, even if the trial court's decision had not been overturned on direct appeal, the case would have little relevance to the facts at issue in this case because *Kuzma* dealt with a contractual statute of limitations, not a cancellation clause. *See Kuzma*, 32 Misc. 3d 1217(A) at *4.

other party with some overly oppressive term.'" *In re Conifer Realty LLC (EnviroTech Servs., Inc.)*, 106 A.D.3d 1251, 1255 (3d Dep't 2013) (quoting *Brower v. Gateway 2000*, 246 A.D.3d 246, 253 (1st Dep't 1998)). The terms of the cancellation clause were not overly oppressive, and were evenly balanced. Because Plaintiff has not sufficiently alleged facts supporting either procedural or substantive unconscionability, Plaintiff's unconscionability claim fails, and any amendment to the complaint would be futile. *See Shell*, 365 F. Supp. 2d at 367.

### 2. The Cancellation Provision is Not Ambiguous

Plaintiff also argues that the cancellation clause is unenforceable because it is ambiguous. (Dkt. 12 at 7-8). Specifically, "Plaintiff argues that the [cancellation language] gives an insured party absolutely no notice as to what actions may or may not be taken to avoid short-notice termination of a policy it had otherwise complied with in good faith." (*Id.* at 8). As is explained above, New York law allows for contract termination without cause. *See Red Apple Child Dev. Ctr.*, 303 A.D.2d at 157-58. Plaintiff does not explain how the cancellation clause, which allowed for termination "for any other reason," was impermissibly vague. (*See* Dkt. 12 at 7-8).

If ambiguity is found in an insurance contract, the language is to be "strictly construed against the insurer." *Gov't Emps. Ins. Co. v. Mizell*, 36 A.D.2d 452, 454 (4th Dep't 1971). "But, when the policy's provisions are unambiguous and intelligible, courts should enforce them as drafted." *Rockland Exposition, Inc. v. Great Am. Assurance Co.*, 746 F. Supp. 2d 528, 538 (S.D.N.Y. 2010) (citing *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)). Language in an

insurance contract is ambiguous when it is subject to more than one reasonable interpretation. *See Cont'l Cas. Co. v. Rapid-Am. Corp.*, 80 N.Y.2d 640, 652 (1993). Terms must be interpreted "in light of common speech and the reasonable expectations of a businessperson." *Parks Real Estate Purchasing Grp.*, 472 F.3d at 42 (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 13 A.D.3d 599, 600 (2d Dep't 2004)).

Contrary to Plaintiff's conclusory argument, there is no ambiguity in the cancellation policy's language. The policy provides that, with sufficient notice, Defendant can cancel the policy "for nonpayment of premium; or . . . for any other reason." (Dkt. 6-4 at 12). Under common usage, "any other reason" is not open to more than one interpretation—Defendant could rely on whatever ground or cause it wanted to cancel the policy, as long as it provided the required notice. Because Plaintiff has not even attempted to show where there was ambiguity in the language of the policy, and because the Court has found none, Plaintiff's argument fails. Additionally, any amendment to add such an argument to the complaint would be futile, as the terms of the contracts are plainly unambiguous.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 6) is granted, and the complaint is dismissed.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 20, 2016
       Rochester, New York